GORDON JONES *et al.* v. THE BOATMEN'S BANK OF ST. LOUIS, MISSOURI, *et al.*

**No. 13,077.** ( 72 Pac. 391.)

Error from Chase district court; DENNIS MADDEN, judge. Opinion filed April 11, 1903.   Affirmed.

*Johnson, Rusk & Stringfellow,* and *Graves & Hamer,* for plaintiffs in error.

*R. E. Ball,* and *I. P. Ryland,* for defendant in error First National Bank of Bethlehem, Pennsylvaina, *Bottsford, Deatherage & Young,* for defendant in error Boatmen's Bank, and *Dawes & Wulfekuhler,* for defendants in error H. W. and F. W. Wulfekuhler.

*Per Curiam:* The court below made findings of fact and conclusions of law conclusive of the rights of the parties to this proceeding in error, as follows:

"The court finds that this is a controversy over 1940 head of cattle, known as the 'Frank Crowley herd,' which were bought of him and brought from the Panhandle district of Texas in April, 1898, by G. G. Gillett, Dake & Keeler, and Thomas Trower's Sons, and upon the arrival of said herd in Chase county, Kansas, were sold to D. W. Naill, and by said D. W. Naill conveyed by ten chattel mortgages to Irwin Brothers & Co., nine of which conveyed 200 head of cattle each and the tenth conveyed 140 head of cattle, making in all said 1940 head of cattle, said Naill mortgages being dated on the 20th day of May, 1898, and that said mortgages were given to raise the money to pay the purchase-price of said cattle.   The court finds that said ten mortgages so executed by said D. W. Naill were duly recorded on May 23d, 1898, and the court further finds that said ten mortgages so made by said Naill conveying said 1940 head of cattle were a first lien on said 1940 head of cattle.

"The court further finds that the three mortgages made by defendant E. B. Curtis to the defendant J. C. Bohart Commission Company, dated the 18th day of June, 1898, and by which three mortgages 2000 head of cattle were conveyed as security by said Curtis to said J. C. Bohart Commission Company, covered and sought to convey the same cattle conveyed by said ten mortgages so made by said Naill, and the court finds that said Curtis did not have title to any of said cattle so conveyed by him by said three mortgages, and the court also finds that said three mortgages so made by said Curtis were made pursuant to a conspiracy and as a false pretense, and with a view and design of deceiving the money market

and defrauding those engaged in the business of loaning money on cattle securities.

"The court further finds that the series of ten mortgages made by defendant G. G. Gillett to the defendant A. J. Gillespie Commission Company, nine of which last mortgages conveyed 200 head of cattle each, and the tenth of which last series of mortgages conveyed 140 head of cattle, and all of which mortgages were dated October 21st, 1898, and recorded on the 22d day of October, 1898, conveyed the same 1940 head of cattle that were conveyed by said ten mortgages so made by said Naill and the same cattle which were so sought to be conveyed by said three mortgages so made by said Curtis, and the court further finds that said ten mortgages so made by said Gillett were made by him and accepted by said A. J. Gillespie Commission Company for the purpose and with the intention and understanding that the money derived from said ten mortgages so made by said G. G. Gillett should be used, and that the same was used, to pay off said ten mortgages so made by said Naill, and that said Gillett so made said ten mortgages and the same were received and accepted by said A. J. Gillespie Commission Company and negotiated by said A. J. Gillespie Commission Company, and said ten mortgages so made by said Naill were paid by said A. J. Gillespie Commission Company from the proceeds of said ten mortgages so made by said Gillett with the understanding, purpose and agreement on the part of said A. J. Gillespie Commission Company and said Gillett and the owner of said ten Naill mortgages that said ten mortgages so made by said Gillett were to be, and were from the time of the making and recording of the same and the payment as aforesaid of said ten mortgages so made by said Naill, a first lien on and against said 1940 head of cattle.

"The court further finds that the said owners and holders of said ten chattel mortgages so made by said Gillett are entitled to be and they are hereby adjudged to be subrogated to the lien and encumbrance of said ten chattel mortgages so made by said Naill, and that the said owners and holders of said ten chattel mortgages so made by said Gillett are entitled, by virtue of such subrogation to and substitution in place of said ten chattel mortgages so made by the said Naill, to participation in and distribution of said fund.

"The court further finds and adjudges that said three chattel mortgages so made by said Curtis and his renewal mortgage held by said Donovan and the Stock-yards Bank are null and void and do not constitute a lien or liens upon said cattle or any part thereof, and that the owners and holders of said ten chattel mortgages so made by said Gillett are, by virtue of said subrogation and substitution in place of said ten chattel mortgages so made by said Naill, entitled to and have a first lien upon said 1940 head of cattle in favor of the owners and holders of said chattel mortgages so made by said Gillett."

The court further determined the ownership of the respective mortgages involved, the correctness of which determination is not questioned, and made distribution of the proceeds of the sale of the cattle, which had been disposed of pending the litigation, according to the findings and conclusions set forth above. The holders of the Curtis mortgages prosecute error.

If the findings of fact are sufficiently supported by the

evidence, the law is clear that the holders of the Gillett mortgages are entitled to be subrogated to the rights of the Naill mortgagees, that the plaintiffs in error have no intervening right which would prevent such subrogation, have no right to participate in the fund derived from the cattle at all, and should account for so much thereof as remains in their hands. All the substantial findings of fact are attacked as being unsupported by, or contrary to, the evidence. The evidence in the voluminous record is quite conflicting upon many questions, and different inferences might be drawn from much of it. It is not, however, the province of this court to consider weight of evidence or credibility of witnesses. It will not set aside a finding of fact supported by the testimony of a single interested witness, even though the finding be opposed to the testimony of many disinterested witnesses. Preponderance of evidence will not be passed upon at all, and a finding of fact sustained by some substantial testimony will not be disturbed. These rules have been invariably followed by this court from its establishment to the present time, and will not now be departed from. The record has been examined and is found to disclose sufficient evidence to sustain every material finding of fact made by the trial court. This being true, all the assignments of error must fail, excepting those relating to the admission and rejection of evidence, and none of the rulings of the trial court in these respects were prejudicial.

The judgment of the district court is therefore affirmed.